

BC

BI

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



FILED

2/4/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

LaShunté A. Walton         )
                            )
                            )
                            )
Plaintiff(s),               )     Case Number: 1:25-cv-00421
                            )
v.                      )
South Holland School Dist.   )
                            )
150                       )
                            )
Defendant(s).             )

### Amended   COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is LaShunté A. Walton       of the

county of   Cook      in the state of Illinois.

3. The defendant is South Holland School Dist. 150 , whose

street address is 848 E 170th Street ,

(city) South Holland (county) Cook (state) IL (ZIP) 60473

(Defendant's telephone number) (708)-339-4240

4. The plaintiff sought employment or was employed by the defendant at (street address)

16800 Greenwood Ave. (city) South Holland

(county) Cook (state) IL (ZIP code) 60473

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.     The plaintiff [*check one box*]

    (a)  ☐   was denied employment by the defendant.

    (b)  ☐   was hired and is still employed by the defendant.

    (c)  ☒   was employed but is no longer employed by the defendant.

6.     The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)___9___, (day)_26_, (year)2022.

7.1    *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a)   The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☒*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i)   ☒ the United States Equal Employment Opportunity Commission, on or about (month)___1___ (day)___6___ (year)2023.

        (ii)  ☒  the Illinois Department of Human Rights, on or about (month)___1___ (day)___6___ (year)2023.

    (b)   If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and

    (a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☒ the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month)___10___ (day)_15_ (year) 2024 a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [***check only***

***those that apply***]:

    (a)  ☒  Age (Age Discrimination Employment Act).

    (b)  ☒  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII

claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42

U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the

Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights
protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify): retaliated by withholding wages, benefits + overtime

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

and acts of force/labor.

13.   The facts supporting the plaintiff's claim of discrimination are as follows:

See Attachment

14.   **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.   The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16.   THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a)   ☐ Direct the defendant to hire the plaintiff.

   (b)   ☐ Direct the defendant to re-employ the plaintiff.

   (c)   ☐ Direct the defendant to promote the plaintiff.

   (d)   ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e)   ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f)   ☐ Direct the defendant to (specify): _____

_____

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_L. a. Walton_____
(Plaintiff's signature)

_LaShunté A. Walton_____
(Plaintiff's name)

_15354 5th Ave._____
(Plaintiff's street address)

(City) _Phoenix_____ (State) _IL___ (ZIP) _60426_

(Plaintiff's telephone number) _708-675-7730_____

Date: _1/31/2025_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

Case Numer: 1:25-cv-00421

The plaintiff was employed by defendant from August 17, 2022 –November 22, 2022. During plaintiff's employment, defendant engaged in and permitted acts of workplace mistreatment, discrimination and wage theft. Which constitute work place bullying based on the plaintiffs protected characteristics, the defendant retaliated against the plaintiff for exercising rights under ADA and FMLA. v. Maintaining a hostile and toxic work environment vi. Failing to provide a job description and misclassifying plaintiff's job and duties and withholding earned wages, overtime and benefits.

On or about 9/26/2022, plaintiff raised a complaint with her employer regarding cruel and unusual treatment in her workplace. She alleged discriminatory acts in regards to her race and color. She had been subjected to disparate treatment, included but not limited to unequal treatment in the workplace, job reclassification, no job description given, increased work hours, change in workplace policies in comparison to her white counterparts. She was subjected to derogatory remarks from her supervisors and coworkers up to her date of termination on 11/22/2022.

Plaintiff further alleges that discrimination on the basis of a disability and perceived disability. On 10/2/2022 the plaintiff was hospitalized, after informing her employer the plaintiff was met with unwarranted scrutiny and unfair treatment by the business manager/CSBO unlike in other times in which she requested to utilize sick time. She was denied the use of sick days, medical leave and or a medical accommodation of any kind. Further district officials refused plaintiff due process in filing an official certification of Healthcare Provider for employee's serious healthcare condition under the FMLA (a HIPAA approved document for physicians use when reporting to patients protected medical information) and the usage of her paid for IMRF employee benefits. Such workplace permissions were granted to other employees. To include the business manager himself when his maternity leave was granted, at and around the same time of the plaintiff's request. Plaintiff thus felt that as a result his age (33), race (white) and gender (male) may have also played a factor as to why his medical benefits were granted without question, unlike in her case.

The workplace conditions created undue stress, anxiety, and deterioration of the plaintiffs physical and mental health. The denial of due compensation has caused undue hardship and has directly violated her rights under federal law.

Ms. LaShunte A. Walton, Complainant

vs.

South Holland School District 150, Respondent.

**Request for Review of IDHR Charge No. CA1702; ALS # 24-0109**

**Introduction**

This response requests a review of the Illinois Department of Human Rights' (IDHR) denial of Ms. Walton's charge of discrimination against South Holland School District 150 (District). The original charge alleged discrimination based on race (Black), age (50), and perceived disability.

**Factual Background**

Ms. Walton was hired by the District as a Licensed Practical Nurse (LPN) through the use of a Frontline online portal. The application process was used by many school districts and applicants could apply to several schools at one time. **She was not provided with a written job description at the time of hire, potentially violating the Illinois Human Rights Act (IHRA) [775 ILCS 5/1-101 et seq.] which requires employers to provide truthful information about the job.**

Her position was subsequently reclassified to Certified School Nurse, a role for which she did not apply and lacked the minimum qualifications, and asked to perform in other capacities for which she was not credentialed.

Ms. Walton alleges the District subjected her to microaggressions, harassment, and threats related to her race, age, and perceived disability. She specifically cites comments from Ms. Cunningham and the workload disparity compared to similarly situated colleagues.

Ms. Walton contends she was assigned additional responsibilities exceeding those of an LPN and faced harassment and unfair working conditions. She asserts the District failed to offer her full Illinois Municipal Retirement Fund (IMRF) benefits or adhere to its sick leave policy. She further alleges the District discriminated against her compared to white colleagues regarding time off and termination.

Ms. Walton contends the District failed to accommodate her perceived disability despite a medical leave request. She argues this violates the Americans with Disabilities Act (ADA). Ms. Walton alleges the District retaliated against her for requesting leave by withholding her wages, denying use of her sick days, terminating her employment and denying unemployment benefits.

**Basis for Review**

Ms. Walton requests a review of the IDHR's decision based on the following:

- **Failure to Provide Job Description:** The District's failure to provide a job description at the time of hire creates ambiguity regarding her responsibilities, potentially violating IHRA.
- **Unfair Work Conditions and Harassment:** The additional responsibilities and alleged harassment may constitute a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and the IHRA.
- **Disparate Treatment:** The alleged preferential treatment of white colleagues regarding leave and termination requires further investigation under Title VII and the IHRA.
- **Denial of Benefits:** The District's alleged denial of full IMRF benefits and adherence to its sick leave policy warrant review, potentially violating the Employee Retirement Income Security Act (ERISA) [29 U.S.C. § 1001 et seq.] and the IHRA.
- **Disability Discrimination:** The District's alleged failure to accommodate Ms. Walton's perceived disability may violate the ADA.

- **Wage Theft and Benefits:** Ms. Walton alleges various wage and benefit concerns including denial of overtime pay, proper meal and break periods, and unemployment benefits. These issues fall under the Fair Labor Standards Act (FLSA) [29 U.S.C. § 201 et seq.] and the Illinois Department of Employment Security (IDES) regulations.
- **Retaliation:** Ms. Walton alleges retaliation for requesting leave by termination. This is a violation of Title VII, the ADA, and the IHRA.

**Case Evidence**

Respondent Exhibit A, page 4 paragraph 2 job description does not match the license or credentialing requirements as set by the state for Ms. Walton. She is a license practical nurse which is required to work under the supervision of such master level professionals that Ms. Morris references.

Respondent Exhibit D, page 4 paragraph 3 job description is contextually used with similar words of that in which Ms. Walton applied for. Which gave the "Client" the roll and responsibility to hold the "Contractor" to employee handbook guidelines. In Page 4 paragraph 5, toileting, eating, and other such "activities of daily living" is a requirement under the Individual with Disabilities Education Act, in such cases these activities are to be assisted through a credentialed para professional. The requirement of a school nurse is to oversee the entire student body health and well being, by discharging her responsibilities to unlicensed people violates state nursing laws and directly jeopardizes Ms. Walton's standing with the state board of nursing.

Page 5 paragraph 6, Respondent stated that all agency Nurses were expected to be there, however it was Ms. Smith, contractor and Ms. Walton, both black that were required to attend. Page 5 paragraph 7 identified Ms. Walton as an LPN, not a PEL certified school nurse.

Page 5 paragraph 8, Ms. Cortesi-Caruso permissions were given to Ms. Walton and Ms. Saraceni just as Ms. Morris referenced in Page 5 Paragraph 7, who is the superintendent. This was consistent with Ms. Walton's previously approved leave time of 3:15p.

Ms. Walton's race conferences were also subjugated to same race discriminatory compositions, as she and Ms. Smith, contractor both black were the only two held to reporting to additional work times and hours.

Evidence was not considered on the basis of race when Mr. Panici, white male sick days were granted in and around the same time that Ms. Walton was denied use of her sick days. Both are employees of respondent.

Ms. Walton contends that after the meeting with administrators, she was not allowed to leave at the previously granted 3:15 pm dismissal as alleged by Ms. Morris. As Ms. Morris, ended the meeting stating that she would get back with her regarding the matter. Ms. Walton did make an attempt to service the disabled child, however the child and Para professional schedule did not require Ms. Walton's assistance on that day.

Count B & C in relations to Ms. Walton's discharge on the bases of race was demonstrated in direct correlation to Ms. Cunningham's statement, of black women not being able to work together. Walton was held to a much higher standard than her white counterpart, by which contractual terms are equivalent to that for the position that she holds. Walton was subjected to a hostile work environment and her request to use her sick time and or be granted a leave after submitting a doctors note as outlined in Respondent Exhibit H was met with an unfavorable responds than that of those of other races.

Ms. Walton contends that the school district failed to provide her with a clinical supervisor and she

relied on the assistance of the Illinois State Board of Education (ISBE) for most guidance and support in carrying out her roll. She adhered to administrative request to complete records and contacting families without complaint or push back. Ms. Walton, had no disciplinary actions in her file and no unexcused absences. These and all such matters were only brought to the attention in relations to this filing.

Page 9 paragraphs 8 - 14, Mr. Panici did not honor Ms. Walton the sick policy as described in the statement, Ms. Walton was denied the use of any/all accumulated sick, personal days or a leave of absence. Further, in request for medical leave, the "certificate" is to be completed by the doctor as to provide only what is "medically necessary" in relations to an employer. Ms. Walton, further contends that the FMLA request for leave violated her rights in relation to her IMRF benefit and the processing of such claims.

Page 10, paragraph 15 and 16, respondent continued to mandate that Ms. Walton work even when she was refused compensation for previously worked hours. In spite of her doctors request for time off district officials continued at attempts of force labor upon Ms. Walton.

Respondent actions of alleging Walton's discharge was as a result of absences that were as a direct result of a medical condition, could not have been avoided. The very nature of the request describes the constitutional guidelines outlined in the "certificate" to meet statues as described as a short term disability. Ms. Walton, contends that respondent did not care to know the nature of her disability, and thus prevented her the proper means for reporting pertinent details regarding her health in a format that was conducive in regard to her Health Information Portability and Accountability (HIPPA) rights.

Ms. Walton ask that you strongly consider Respondents Exhibit B, Employee Handbook and Exhibit 9 Sunbelt contract in which respondents were found to be in violation of their policy:

**Employee Handbook,** page 4 no job description was given; page 5, Ms. Walton was found to be unfit for duty by a board certified physician and was met with opposition by district staff; Page 6 Hours of work and work week did not give lunch or break times; Page 7 Work shift change could have been permitted by an administrator or Superintendent; Page 12 paragraph 2 Ms. Walton was discriminated and retaliated against; page 13, ADA accommodations were met with adversity, further district officials failed to adhere to their uniform grievance policy as outlined in the last paragraph; page 15 Fair labor standards act was not adhere to, as Walton was never compensated or offered overtime nor compensatory time off; page 18 last paragraph, states that the school district network was in effect offered no privacy and page 19. paragraph 1 indicates that users should not expect privacy; page 12 and 22 paragraph 2 failed to offer other instances of receiving FMLA as outlined in IMRF or as a reduced leave schedule. Page 23, paragraph 1 and 2 identifies that a "certificate" is the instrument used to expound on health related leaves; page 24, last paragraph, was not upheld in Ms. Walton's case; Page 25, paragraph 2, handbook confirms that a "certificate' is the instrument used to transmit medical information; Page 26 a personal leave of absence was never presented as an option to Ms. Walton, Page 27, Ms. Walton had no disciplinary actions held against her; Page 31, a proper discharge rights were not offered to Ms. Walton, Page 33, Ms. Walton never received her final pay.

**Sunbelt contract;** Page 2 #6, Onsite Responsibility, #8 Equal opportunity, #9 Professional fees, #12 Administrative Responsibilities, #19 Paid Sick Leave, #25 Family Education Rights and Privacy Act and Illinois School Student Record Act verbiage is in similar regard to the rights and privileges that are outlined in School District 150 Handbook. These statements and others like it confirms that in spite of Ms. Saranci was labeled a contractor the laws governing her under the contract terms constitutes that both she and Ms. Walton should have been offered the same in regards to their equivalent school nurse position.

Ms. Walton intends to submit the following additional exhibits in support of her claims:

- Exhibit 1: Frontline application demonstrating application for LPN positions
- Exhibit 2: Illinois General Assembly State License Practical Nurse Description
- Exhibit 3: Email from ISBE Educator Licensure April Bovender Givens
- Exhibit 4: Email to Ms. Marshall indicating a need for an accommodation
- Exhibit 5: Email from Daniel Panici indicating that he was in receipt of my doctors note
- Exhibit 6: Email to ISBE regarding work concerns
- Exhibit 7: Email Responds from Rebecca Doran regarding School compliance status
- Exhibit 8: ISBE Description of what is a Paraprofessional and it's requirements
- Exhibit 9: Illinois General Assembly Statues regarding Physical fitness and professional growth
- Exhibit 10: IMRF Denial policy and hearing process
- Exhibit 11: Documentation of sick leave usage
- Exhibit 12: Medical leave request from healthcare provider
- Exhibit 13: Certification of Health care provider for employee's Serious Health Condition under the Family and Medical Leave Act
- Exhibit 14: Records from the Illinois Department of Employment Security hearing
- Exhibit 15: Email to enforce labor
- Exhibit 16: Email to confirm wage theft.

## Conclusion

Ms. Walton respectfully requests the IDHR to reconsider its decision and investigate her allegations of discrimination based on race, age, disability, and retaliation. The District's actions, as evidenced by the additional information provided, created a hostile work environment and violated her protected rights.

Exhibit
1

## South Holland School District 150 Application Started

From: South Holland School District 150 (mailbot@applitrack.com)

To: lalollis@yahoo.com

Date: Wednesday, July 20, 2022 at 01:20 PM CDT

Thank you for starting your application with South Holland School District 150.

Use the link below to log into your application.
http://www.applitrack.com/sd150/OnlineApp/

As a reminder, your application will expire in 25 days if not completed.

Thank you,

South Holland School District 150 Frontline MailBot



# Illinois General Assembly

Home    Legislation & Laws    Senate    House    My Legislation    Site Map

| | |
|---|---|
| Bills & Resolutions | **Illinois Compiled Statutes** |
| Compiled Statutes | **Back to Article Listing   Public Acts   Search   Guide   Disclaimer   Printer-Friendly Version** |
| Public Acts | |
| Legislative Reports | **Information maintained by the Legislative Reference Bureau** |

**Information maintained by the Legislative Reference Bureau**
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

IL Constitution

Legislative Guide

Legislative Glossary

**Search By Number
(example: HB0001)**

Go | Search Tips

**Search By Keyword**

Go
Search Tips

Advanced Search





## PROFESSIONS, OCCUPATIONS, AND BUSINESS OPERATIONS
## (225 ILCS 65/) Nurse Practice Act.

          (225 ILCS 65/Art. 55 heading) (was 225 ILCS 65/Tit. 10
heading)
                    ARTICLE 55. NURSING LICENSURE - LICENSED
                              PRACTICAL NURSES
     (Article scheduled to be repealed on January 1, 2028)
(Source: P.A. 95-639, eff. 10-5-07.)

     (225 ILCS 65/55-5)
     (Section scheduled to be repealed on January 1, 2028)
     Sec. 55-5. LPN education program requirements.
     (a) All Illinois practical nurse education programs must be
reviewed by the Board and approved by the Department before the
successful completion of such a program may be applied toward
meeting the requirements for practical nurse licensure under
this Act. Any program changing the level of educational
preparation or the relationship with or to the parent
institution or establishing an extension of an existing program
must request a review by the Board and approval by the
Department. The Board shall review and make a recommendation for
the approval or disapproval of a program by the Department based
on the following criteria:
          (1) a feasibility study that describes the need for
     the program and the facilities used, the potential of the
     program to recruit faculty and students, financial support
     for the program, and other criteria, as established by rule;
          (2) program curriculum that meets all State
     requirements;
          (3) the administration of the program by a Nurse
     Administrator and the involvement of a Nurse Administrator
     in the development of the program; and
          (4) the occurrence of a site visit prior to approval.
     (b) In order to obtain initial Department approval and to
maintain Department approval, a practical nursing program must
meet all of the following requirements:
          (1) The program must continually be administered by

(225 ILCS 65/55-25)
(Section scheduled to be repealed on January 1, 2028)
    Sec. 55-25. Inactive status of a LPN license. Any licensed
practical nurse who notifies the Department in writing on forms
prescribed by the Department may elect to place his or her
license on inactive status and shall, subject to rules of the
Department, be excused from payment of renewal fees until notice
is given to the Department, in writing, of his or her intent to
restore the license.
    Any practical nurse requesting restoration from inactive
status shall be required to pay the current renewal fee and
shall be required to restore his or her license, as provided by
rule of the Department.
    Any practical nurse whose license is on an inactive status
shall not practice nursing as defined by this Act in the State
of Illinois.
(Source: P.A. 95-639, eff. 10-5-07.)


    (225 ILCS 65/55-30)
    (Section scheduled to be repealed on January 1, 2028)
    Sec. 55-30. LPN scope of practice.
    (a) Practice as a licensed practical nurse means a scope of
nursing practice, with or without compensation, under the
guidance of a registered professional nurse or an advanced
practice registered nurse, or as directed by a physician
assistant, physician, dentist, podiatric physician, or other
health care professionals as determined by the Department, and
includes, but is not limited to, all of the following:
        (1) Conducting a focused nursing assessment and
    contributing to the ongoing comprehensive nursing assessment
    of the patient performed by the registered professional
    nurse.
        (2) Collaborating in the development and
    modification of the registered professional nurse's or
    advanced practice registered nurse's comprehensive nursing
    plan of care for all types of patients.
        (3) Implementing aspects of the plan of care.
        (4) Participating in health teaching and counseling
    to promote, attain, and maintain the optimum health level of
    patients.
        (5) Serving as an advocate for the patient by
    communicating and collaborating with other health service
    personnel.
        (6) Participating in the evaluation of patient
    responses to interventions.
        (7) Communicating and collaborating with other
    health care professionals.
        (8) Providing input into the development of policies
    and procedures to support patient safety.
(Source: P.A. 100-513, eff. 1-1-18.)


    (225 ILCS 65/55-35)
    (Section scheduled to be repealed on January 1, 2028)
    Sec. 55-35. Continuing education for LPN licensees. The
Department may adopt rules of continuing education for licensed
practical nurses that require 20 hours of continuing education
per 2-year license renewal cycle. The rules shall address
variances in part or in whole for good cause, including without
limitation illness or hardship. The continuing education rules
must ensure that licensees are given the opportunity to
participate in programs sponsored by or through their State or
national professional associations, hospitals, or other
providers of continuing education. The continuing education
rules must allow for a licensee to complete all required hours

Case: 1:25-cv-00421 Document #: 8 Filed: 02/04/25 Page 15 of 33 PageID #:101

Exhibit 3

## School Nurse - ELIS (Educator Licensure Information System)

From: April Bovender Givens (abgivens@s-cook.org)

To: lalollis@yahoo.com

Date: Monday, May 20, 2024 at 04:44 PM CDT

Hi Lashunte,

There is no record of your name or social security number in the Educator Licensure Information System (ELIS). That means that you have never held a Professional Educator License (PEL), formerly a Type 73 certificate, with a School Nurse endorsement. It also indicates that no school district has ever reported you in the ISBE Employment Information System (EIS) in a position in an Illinois public school as a school nurse.

I hope that helps!

April Bovender Givens
Educator Licensure
www.s-cook.org
PH: 708-754-6600
*Licensure Hours: Mon. 1:00 p.m. – 8:00 p.m., Tue. – Fri. 8:30 - 3:30 p.m.*

**PLEASE NOTE: South Cook ISC has temporarily relocated to 6202 Vollmer Rd. Matteson, IL 60443. PLEASE CONTACT US BY TELEPHONE OR EMAIL PRIOR TO VISITING THIS OFFICE IN PERSON!**

Mailing Address:
South Cook ISC
253 West Joe Orr Rd.
Chicago Heights, IL 60411

  

about:blank

1/1

Exhibit A

5/29/24, 1:53 PM

Yahoo Mail - Re: LaShunte Start Date

## Re: LaShunte Start Date

From: L.A. Lollis (lalollis@yahoo.com)

To: dmarshall@sd150.org

Date: Tuesday, October 4, 2022 at 01:55 PM CDT

Hi Ms. Marshall,

Please see the attached note, as I am currently undergoing medical treatment and won't be able to continue my normal work responsibilities until further notice.

Please let me know if there is any additional forms that you will need for me to complete and inform any/all personnel accordingly.

Thank you,

LaShunte A. Walton

Exhibit
5

## Doctors Note

From:  Daniel Panici (dpanici@sd150.org)

To:  lalollis@yahoo.com

Cc:  dmarshall@sd150.org

Date:  Tuesday, October 4, 2022 at 03:38 PM CDT

Good afternoon,

This is Daniel Panici, CSBO at South Holland School District 150.

I received your doctor's note. The documentation you provided is insufficient to provide a basis for sick leave use.  It does not provide a reason why you need sick leave.  Please send further correspondence documenting why you have not been at work and why you will not be at work.

At the beginning of the school year, you were allotted 10 sick leave days and do not qualify for FMLA at this time. Please keep this in mind when deciding whether to come to work.

Thank you,


*Daniel Panici*
*Business Manager/CSBO*
*South Holland School District 150*
*P:708-339-4240*
*C:708-897-3810*

Exhibit
6

## School Nurse ISBE policy

From: LA Lulu (hgspaparty@yahoo.com)

To: schoolnurse@isbe.net

Date: Thursday, January 25, 2024 at 08:12 PM CST

Hello, I am an experienced License Practical Nurse here in Illinois and was recently asked to oversee a school of 215 students with no certified nurse oversight and a parttime Director of Special Education.
I was asked to also provide activates of daily living (in para-professional absence) for 1 chronically disabled individual in this general education setting.

I love the children and would most want to continue my career, but unfortunately, I can't find much information to support my concerns on your website to offer the Principle my who is said to be my immediate supervisor.

Thank you so much for helping me to find answers and solutions to some of educations most challenging situations.

I look forward to hearing from you soon!

Exhibit
7

## RE: School Nurse ISBE policy

From: SchoolNurse (schoolnurse@isbe.net)

To: hgspaparty@yahoo.com

Date: Friday, February 2, 2024 at 10:58 AM CST

Hello

Please review the Illinois Nurse Practice Act. As an LPN, you must work under the direction of an RN, APRN, PA, MD, or DO to be within your scope of practice.

Your concerns are valid and I suggest you reach out to Illinois Department of Financial and Professional Regulations with concerns about your license as an LPN.

If the district would like to speak to me regarding steps to be compliant with an LPN working in the district, I am happy to speak with them. I have talked with several districts and provided suggestions for this type of concern.

Rebecca Doran, MSN, RN, PEL-SN, NCSN
(she/her)
Principal Consultant
Wellness Department
217-782-5270
rdoran@isbe.net



**ILLINOIS**
STATE BOARD OF
**EDUCATION**

**From:** LA Lulu <hgspaparty@yahoo.com>
**Sent:** Thursday, January 25, 2024 8:12 PM
**To:** SchoolNurse <schoolnurse@isbe.net>
**Subject:** School Nurse ISBE policy

You don't often get email from hgspaparty@yahoo.com. Learn why this is important

Hello, I am an experienced License Practical Nurse here in Illinois and was recently asked to oversee a school of 215 students with no certified nurse oversight and a parttime Director of Special Education.

I was asked to also provide activates of daily living (in para-professional absence) for 1 chronically disabled individual in this general education setting.

I love the children and would most want to continue my career, but unfortunately, I can't find much information to support my concerns on your website to offer the Principle my who is said to be my immediate supervisor.

Thank you so much for helping me to find answers and solutions to some of educations most challenging situations.



# What is a Paraprofessional?

Paraprofessionals play an essential role within school districts. Under the supervision of a licensed teacher, a paraprofessional supports teachers and students in many ways. For instance, a paraprofessional can tutor students or assist the teacher with managing the classroom and organizing instructional materials.



## Option 1 — Short-Term Approval for the Paraprofessional
**Application fee: $50 | No registration fee**

### REQUIREMENTS
✓ High school diploma (or equivalent) or higher

### EMPLOYMENT
- Valid for three fiscal years*
- Non-renewable
- Eligible to be employed as a full-time paraprofessional
- No limit on work days

### HOW TO APPLY
1. Log in to ELIS at apps.isbe.net/iwasnet/login.aspx.
2. From the home page, select "Apply for Credential" and click "Approvals."
3. Choose Short-term Approval for Paraprofessionals to complete application and pay fee.
4. Submit copy of high school diploma to licensureforms@isbe.net.



## Option 2 — ELS Paraprofessional Educator Endorsement
**Application fee: $100 | Registration fee: $30**

### REQUIREMENTS
✓ Must provide proof of **one** of the following:
- Associate degree or higher
- 60 semester hours of coursework
- High school diploma/GED** with score of 460 or higher on the ETS Paraprofessional test
- High school diploma/GED** with score of 4 or higher on the ACT Workkeys Applied Mathematics and Reading for Information tests

### HOW TO APPLY
1. Log in to ELIS at apps.isbe.net/iwasnet/login.aspx.
2. From the Action Center, apply for a paraprofessional license.
3. Complete application and pay fee.
4. Submit copy of test scores to licensureforms@isbe.net or have your institution of higher education email official transcripts to transcripts@isbe.net.
5. Once issued, you must register your license in ELIS.

### EMPLOYMENT
- Valid for five years
- Renewable
- Eligible to be employed as a full-time paraprofessional
- No limit on work days

---

*You must be working toward fulfilling requirements for the ELS Paraprofessional Educator endorsement during the time you have a short-term approval.
**If you already hold the paraprofessional short-term approval, you do not need to resubmit your high school diploma/GED.

**isbe.net**

August 2022



**Illinois State Board of Education**

5/29/24, 2:52 PM
Case: 1:25-cv-00421 Document #: 8 Filed: 02/04/25 Page 21 of 33 PageID #:107
Illinois General Assembly - Illinois Compiled Statutes

*Exhibit 9*



# Illinois General Assembly

Home   Legislation & Laws   Senate   House   My Legislation   Site Map

Bills & Resolutions

Compiled Statutes

Public Acts

Legislative Reports

IL Constitution

Legislative Guide

Legislative Glossary

**Search By Number
(example: HB0001)**

Go | Search Tips

**Search By Keyword**

Go
Search Tips

Advanced Search





## Illinois Compiled Statutes

ILCS Listing   Public Acts   Search   Guide   Disclaimer

**Information maintained by the Legislative Reference Bureau**
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing
process. Recent laws may not yet be included in the ILCS database, but they are
found on this site as Public Acts soon after they become law. For information
concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting
purposes, statutory changes are sometimes included in the statute database before
they take effect. If the source note at the end of a Section of the statutes includes a
Public Act that has not yet taken effect, the version of the law that is currently in
effect may have already been removed from the database and you should refer to
that Public Act to see the changes made to the current law.

(105 ILCS 5/24-5) (from Ch. 122, par. 24-5)
    Sec. 24-5. Physical fitness and professional growth.
    (a) In this Section, "employee" means any employee of a
school district, a student teacher, an employee of a contractor
that provides services to students or in schools, or any other
individual subject to the requirements of Section 10-21.9 or 34-
18.5 of this Code.
    (b) This subsection (b) does not apply to substitute teacher
employees. School boards shall require of new employees evidence
of physical fitness to perform duties assigned and freedom from
communicable disease. Such evidence shall consist of a physical
examination by a physician licensed in Illinois or any other
state to practice medicine and surgery in all its branches, a
licensed advanced practice registered nurse, or a licensed
physician assistant not more than 90 days preceding time of
presentation to the board, and the cost of such examination
shall rest with the employee. A new or existing employee may be
subject to additional health examinations, including screening
for tuberculosis, as required by rules adopted by the Department
of Public Health or by order of a local public health official.
The board may from time to time require an examination of any
employee by a physician licensed in Illinois to practice
medicine and surgery in all its branches, a licensed advanced
practice registered nurse, or a licensed physician assistant and
shall pay the expenses thereof from school funds.
    (b-5) School boards may require of new substitute teacher
employees evidence of physical fitness to perform duties
assigned and shall require of new substitute teacher employees
evidence of freedom from communicable disease. Evidence may
consist of a physical examination by a physician licensed in
Illinois or any other state to practice medicine and surgery in
all its branches, a licensed advanced practice registered nurse,
or a licensed physician assistant not more than 90 days
preceding time of presentation to the board, and the cost of
such examination shall rest with the substitute teacher
employee. A new or existing substitute teacher employee may be
subject to additional health examinations, including screening
for tuberculosis, as required by rules adopted by the Department
of Public Health or by order of a local public health official.
The board may from time to time require an examination of any



substitute teacher employee by a physician licensed in Illinois
to practice medicine and surgery in all its branches, a licensed
advanced practice registered nurse, or a licensed physician
assistant and shall pay the expenses thereof from school funds.
    (c) School boards may require teachers in their employ to
furnish from time to time evidence of continued professional
growth.
(Source: P.A. 100-513, eff. 1-1-18; 100-855, eff. 8-14-18; 101-
81, eff. 7-12-19.)

Home | Legislation & Laws | House | Senate | My Legislation | Disclaimers | Email

This site is maintained for the Illinois General Assembly by the
Legislative Information System, 705 Stratton Building, Springfield, Illinois 62706
Contact ILGA Webmaster



Text Size: A A A | Home | Contact Us | Español    Search: [Search IMRF]

MEMBER LOGIN    EMPLOYER LOGIN

**IMRF**

*Locally funded, financially sound.*

> MEMBERS    ▸ RETIREES    ▸ EMPLOYERS    ▸ INVESTMENTS    ▸ ABOUT IMRF    ▸ PUBLICATIONS AND ARCHIVE

# If You Are Denied Benefits
*for Tier 1 Regular Plan Members*

## Denial due to administrative requirements

If IMRF denies your disability benefits claim because you don't meet the administrative requirements (for example, if you have less than 12 consecutive months of IMRF service credit), we will send you an administrative denial letter.

### What if I disagree with IMRF's decision?

**If you do not agree with this decision, you have 30 days to respond.** The administrative denial letter will detail your next steps.

## Denial due to medical condition

If IMRF denies or terminates your disability benefits based on your medical condition, IMRF will send you an extent of disability denial letter. If you do not agree with this decision, you can request a hearing before the IMRF Board of Trustees Benefit Review Committee.

IMRF must receive a completed "Request for a Hearing" form within 63 days of the date of your denial letter. The form and additional information about the appeal process will be included with your letter.

### Where are the hearings held?

The hearings are held in the IMRF Oak Brook offices. You can:

- Come to your hearing in person, with or without your attorney
- Have a representative or attorney attend for you
- Request a video conference from our Springfield office
- Request a telephone conference at your request
- Present a written appeal without attending in person

After your hearing, the Benefit Review Committee will make a recommendation to the full IMRF Board of Trustees. The Board of Trustees will make the final decision and IMRF will take no further action. IMRF's benefits manager will let you know in writing, and if applicable, your designated representative.

### What if I disagree with IMRF's decision?

If you disagree with this final decision, you can file an action for Administrative Review in the appropriate Circuit Court. You must file this action within 35 days of the date of the notice of the Board's decision.

To learn more about the appeals process, **click here.**

**Table of Contents**

Disability Overview

Eligibility for Disability Benefits

Applying for Disability Benefits

Temporary Disability

Your First Disability Payment

A Reduced Benefit Still Protects You

Social Security and Disability

Impact of Workers' Compensation

Disability Payment Agreement

Trial Work Periods

Outside Employment

Total and Permanent Disability

Investigation Process for Disability

If You Are Denied Benefits

Income Taxes and Disability

Avoiding Closure of Your Claim

Exhibit 11



Phone ․ ․ ․ ‖ 📶          3:30 PM

< 182          C          📹

Carla Cunningham >

Sep 27, 2022 at 6:37 AM

Good Morning Mrs. Cunningham, I'm not feeling well and I'm sorry but I'm not going to make it in today.

Good morning! I'm sorry you're not feeling well. Thank you for letting me know. Please take care of yourself. Feel better. 😊

Thanks

Did you put your day in frontline?

👍

I'm attempting to do that now. Thanks!

Sep 29, 2022 at 11:56 AM

Good morning! FYI: I am attending a safety conference

+          iMessage          🎤

## Caleel Family Medicine Clinic
### Tamer Caleel, DO
DEA # FC4127684 • NPI # 1912213737 • LIC# 02004714A

SUITE B
HOBART, IN 46342
TEL: 219.299.5341
FAX: 219.244.5422

Exhibit 12

Date **10/13/22**

For **Lashunte Walton**          Age _____

Address _____

℞ **Above captioned patient is under my care. Patient requires medical leave of absence as of 10/04/22 through tentative date of 1/04/23. Please fax FMLA forms to fax number above.**

☐ LABEL

REFILL _____ TIMES

_____        _____
DISPENSE AS WRITTEN                         MAY SUBSTITUTE





# Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act

U.S. Department of Labor
Wage and Hour Division



**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

OMB Control Number: 1235-0003
Expires: 6/30/2026

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee at least 15 calendar days to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I - EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: _____
First _____ Middle _____ Last _____

(2) Employer name: _____    Date: _____ (mm/dd/yyyy)
(List date certification requested)

(3) The medical certification must be returned by _____ (mm/dd/yyyy)
(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)

(4) Employee's job title: _____    Job description ☐ is / ☐ is not attached.

Employee's regular work schedule: _____

Statement of the employee's essential job functions: _____

(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves **inpatient care** or **continuing treatment by a health care provider.** For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You also may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Form WH-380-E, Revised June 2020

Case: 1:25-cv-00421 Document #: 87 Filed: 02/04/25 Page 27 of 33 PageID #:113
13(cont.)

**Employee Name:** _____

Health Care Provider's name: (Print) _____

Health Care Provider's business address: _____

Type of practice / Medical specialty: _____

Telephone: _____  Fax: _____  E-mail: _____

#### PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: _____ (mm/dd/yyyy)

(2) Provide your **best estimate** of how long the condition lasted or will last: _____

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐ **Inpatient Care:** The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): _____

☐ **Incapacity plus Treatment:** (e.g. outpatient surgery, strep throat)

Due to the condition, the patient ( ☐ has been / ☐ is expected to be) incapacitated for **more than** three consecutive, full calendar days from: _____ (mm/dd/yyyy) to _____ (mm/dd/yyyy).

The patient ( ☐ was / ☐ will be) seen on the following date(s): _____

The condition ( ☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider (e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment).

☐ **Pregnancy:** The condition is pregnancy.  List the expected delivery date: _____ (mm/dd/yyyy).

☐ **Chronic Conditions:** (e.g. asthma, migraine headaches) Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

☐ **Permanent or Long Term Conditions:** (e.g. Alzheimer's, terminal stages of cancer) Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

☐ **Conditions requiring Multiple Treatments:** (e.g. chemotherapy treatments, restorative surgery) Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐ **None of the above:** If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

**Employee Name:** _____

(4) If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks FMLA leave. (e.g., use of nebulizer, dialysis)

**PART B: Amount of Leave Needed**

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5) Due to the condition, the patient ( ☐ had / ☐ will have) **planned medical treatment(s)** (scheduled medical visits) (e.g.psychotherapy, prenatal appointments) on the following date(s): _____

(6) Due to the condition, the patient ( ☐ was / ☐ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: (e.g. cardiologist, physical therapy) _____

Provide your **best estimate** of the beginning date _____ (mm/dd/yyyy) and end date _____ (mm/dd/yyyy),

for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery (e.g. 3 days/week)

(7) Due to the condition, it is medically necessary for the employee to work a **reduced schedule**.

Provide your **best estimate** of the reduced schedule the employee is able to work. From _____ (mm/dd/yyyy)

to _____ (mm/dd/yyyy) the employee is able to work: (e.g., 5 hours/day, up to 25 hours a week)

(8) Due to the condition, the patient ( ☐ was / ☐ will be) **incapacitated for a continuous period of time**, including any time

for treatment(s) and/or recovery.

Provide your **best estimate** of the beginning date _____ (mm/dd/yyyy) and end date _____ (mm/dd/yyyy),

for the period of incapacity.

(9) Due to the condition, it (☐ was / ☐ is / ☐ will be) medically necessary for the employee to be absent from work on an

intermittent basis (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur _____ times per

( ☐ day ☐ week ☐ month) and are likely to last approximately _____ ( ☐ hours ☐ days) per episode.

Form WH-380-E, Revised June 2020

**Employee Name:** _____

### PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be **not able** to perform the essential job functions of the position during the absence for treatment(s).

(10) Due to the condition, the employee ( ☐ was not able / ☐ is not able / ☐ will not be able)  to perform **one or more** of the essential job function(s). Identify at least one essential job function the employee is not able to perform:




Signature of Health Care Provider _____ Date: _____ (mm/dd/yyyy)

---

**Definitions of a Serious Health Condition** (See 29 C.F.R. §§ 825.113-.115)

**Inpatient Care**

• An overnight stay in a hospital, hospice, or residential medical care facility.
• Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

**Continuing Treatment by a Health Care Provider (any one or more of the following)**

**Incapacity Plus Treatment**: A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

> o Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,

> o At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy**: Any period of incapacity due to pregnancy or for prenatal care.  _____

**Chronic Conditions**: Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions**: A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments**: Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

---

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information: If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

---

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Form WH-380-E, Revised June 2020

**Illinois Department of Employment Security**

P.O. Box 19509
Springfield, IL 62794
Phone: (800) 244-5631 · TTY: (800) 244-5631
Fax: (217) 557-4913
www.ides.illinois.gov

EXhibiT
14

LASHUNTE A. WALTON          7 / 6740
PO BOX 1122
ORLAND PARK, IL 60462-8122

Date Mailed:    12/15/2022
Claimant ID:    2554147

---

## Determination

(Este es un documento importante. Si usted necesita un intérprete, póngase en contacto con el Centro de Servicio al Reclamante al (800) 244-5631.)

The following determination has been made in connection with the claim for unemployment insurance benefits.

Based on all the determinations regarding your claim, you are eligible for benefits as long as you meet the eligibility requirements.

Please read each determination carefully as it may include benefit reductions.

Issue 019 602A - Misconduct
Allow  Effective 11/20/2022 - 12/31/9999

Was the claimant discharged for misconduct connected with the work? The evidence shows the claimant was discharged from S HOLLAND SCH DIS150-HARRINGTN because of unknown reasons. In this case the Employer refused to provide separation information.. Since the claimant's action, which resulted in her discharge was not deliberate or willful, the claimant is not ineligible for benefits from 11/20/2022 in regard to this issue.

**FOR INFORMATION REGARDING YOUR RIGHTS UNDER ILLINOIS' UNEMPLOYMENT INSURANCE ACT AND THE EXACT LANGUAGE OF THE ACT AND IDES RULES, PLEASE VISIT THE AGENCY'S WEBSITE AT www.ides.illinois.gov/UIRights.**
**FOR INFORMATION ON HOW TO OBTAIN FREE LEGAL SERVICES SEE IMPORTANT NOTICE BELOW,**

If you require further details concerning the information in this letter, please contact the Agency at the phone number listed above.

Please see appeal rights listed below and additional information regarding this determination.

J04L                              Page 1 of 3                    ADJ004L    275/134.x, 276/136, 137.xx

LASHUNTE A. WALTON                    exhibit 14                    12/15/2022

019 602A - Misconduct - 820 ILCS 405/602A provides that an individual shall be ineligible for benefits for the weeks in which he has been discharged for misconduct connected with his work and, thereafter, until he has become re-employed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks. The term "misconduct" means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit. The previous definition notwithstanding, "misconduct" shall include any of the following work-related circumstances: 1. Falsification of an employment application, or any other documentation provided to the employer, to obtain employment through subterfuge. 2. Failure to maintain licenses, registrations, and certifications reasonably required by the employer, or those that the individual is required to possess by law, to perform his or her regular job duties, unless the failure is not within the control of the individual. 3. Knowing, repeated violation of the attendance policies of the employer that are in compliance with State and federal law following a written warning for an attendance violation, unless the individual can demonstrate that he or she has made a reasonable effort to remedy the reason or reasons for the violations or that the reason or reasons for the violations were out of the individual's control. Attendance policies of the employer shall be reasonable and provided to the individual in writing, electronically, or via posting in the workplace. 4. Damaging the employer's property through conduct that is grossly negligent. 5. Refusal to obey an employer's reasonable and lawful instruction, unless the refusal is due to the lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act. 6. Consuming alcohol or illegal or non-prescribed prescription drugs, or using an impairing substance in an off-label manner, on the employer's premises during working hours in violation of the employer's policies. 7. Reporting to work under the influence of alcohol, illegal or non-prescribed prescription drugs, or an impairing substance used in an off-label manner in violation of the employer's policies, unless the individual is compelled to report to work by the employer outside of scheduled and on-call working hours and informs the employer that he or she is under the influence of alcohol, illegal or non-prescribed prescription drugs, or an impairing substance used in an off-label manner in violation of the employer's policies. 8. Grossly negligent conduct endangering the safety of the individual or co-workers. For purposes of paragraphs 4 and 8, conduct is "grossly negligent" when the individual is, or reasonably should be, aware of a substantial risk that the conduct will result in the harm sought to be prevented and the conduct constitutes a substantial deviation from the standard of care a reasonable person would exercise in the situation. Nothing in paragraph 6 or 7 prohibits the lawful use of over-the-counter drug products as defined in Section 206 of the Illinois Controlled Substances Act, provided that the medication does not affect the safe performance of the employee's work duties.

If you disagree with this determination, you may complete and submit a request for reconsideration/appeal. A letter will suffice if you do not have an agency form. Your request must be filed with the Illinois Department of Employment Security within thirty (30) calendar days after the date this notice was mailed to you. If the last day for filing your request is a day that the Department is closed, the request may be filed on the next day the Department is open. Please file the request by mail or fax at the address or fax number listed above. Any request submitted by mail must bear a postmark date within the applicable time limit for filing. If additional information or assistance regarding the appeals process is needed, please contact the Agency at the phone number listed above.

If you file or have filed a request for reconsideration/appeal, continue to certify for benefits as long as you remain unemployed or until you are otherwise instructed, even though you will not receive benefits unless the appeal is decided in your favor.

Si no está de acuerdo con esta determinación, puede completar y presentar una solicitud de reconsideración / apelación. La apelación puede ser enviada por correo o fax a la Agencia, en la dirección o número de fax que aparece arriba. La apelación debe ser presentada dentro de los treinta (30) días a partir de la fecha de envío. Si la apelación se envía por correo, debe tener matasellos dentro de los treinta (30) días a partir de la fecha de envío. Si usted presenta una apelación, continuará certificando para beneficios mientras usted permanece desempleado.

Si su solicitud resulta en una apelación, una audiencia se llevará a cabo ante un árbitro que le dará la oportunidad de presentar pruebas. Se le notificará por adelantado de la hora y lugar de la audiencia.

Para obtener información adicional sobre sus derechos de apelación visite nuestra pagina de internet en www.ides.illinois.gov/UI Rights.

Exhibit
15

## Mandatory Meeting Friday, October 28th, 11 am

From: Daniel Panici (dpanici@sd150.org)

To: lalollis@yahoo.com; lwalton@sd150.org

Cc: mmorris@sd150.org

Date: Wednesday, October 26, 2022 at 02:11 PM CDT

Ms. Walton:

You failed to show up for today's mandatory 1:30 PM meeting, and did not contact the District at any point seeking to reschedule the meeting or offering an explanation for why you could not attend. Such unexcused failure on your behalf constitutes insubordination. Accordingly, there will now be another mandatory meeting, scheduled for 11:00 AM on Friday, October 28, 2022, in order to discuss: (1) your unexcused absences from work, which we should have addressed during today's meeting; and (2) your insubordination in failing to attend today's meeting without a valid excuse. A meeting link will be forthcoming in a separate email.

Please be aware that if you do not attend Friday's meeting, the Administration will have no choice but to recommend your termination from employment to the Board of Education at its November 21, 2022 meeting.

Thank you,

Daniel

*Daniel Panici*
*Business Manager/CSBO*
*South Holland School District 150*
*P:708-339-4240*
*C:708-897-3810*

Exhibit
16

## Re: Work Compensation

From: Daniel Panici (dpanici@sd150.org)

To:     lalollis@yahoo.com

Date:  Thursday, December 1, 2022 at 01:49 PM CST

Thank you for the email.  The district does not pay out sick days upon an employee termination.

Thank you.

*Daniel Panici*
*Business Manager/CSBO*
*South Holland School District 150*
*P:708-339-4240*
*C:708-897-3810*

**From:** L.A. Lollis <lalollis@yahoo.com>
**Sent:** Thursday, December 1, 2022 1:40 PM
**To:** Daniel Panici <dpanici@sd150.org>
**Subject:** Work Compensation

Good Afternoon Mr. Panici,

Just a quick update that all district own equipment was returned to the district office on yesterday, November 30th and received/inventoried by Mrs. Lopez & Mrs. Hershel.

Please be so kind as to remit; all withheld work compensations to include the remaining 11 sick days by month end via direct deposit or mail. P.O. Box 1122 Orland Park, IL 60462

Thank you!